Emitt Elmer SWEETEN, Jr., Appellant,

v.

STATE of Texas, Appellee.

No. 13–84–052–CR.

Court of Appeals of Texas,
Corpus Christi.

Feb. 7, 1985.

---

Terrence Gaiser, Houston, for appellant.

Calvin Hartmann, Asst. Dist. Atty., Houston, for appellee.

Before NYE, C.J., and SEERDEN and BENAVIDES, JJ.

## OPINION

NYE, Chief Justice.

This is an appeal from a conviction for aggravated assault, enhanced by two prior felony convictions. Appellant was initially indicted for both kidnapping and aggravated assault. Trial was to a jury, which found appellant guilty of the offense of aggravated assault. Although appellant had initially elected to have the jury assess punishment, following the jury's finding of guilty, appellant sought to waive assessment of punishment by the jury and instead have punishment assessed by the trial court. At this time, appellant waived his

right to appeal in exchange for the State's recommendation to the trial court of a sentence of 30 years' imprisonment. Appellant also entered a plea of true to the enhancement paragraphs of the indictment. After assuring itself of the voluntary nature of this waiver, the trial court accepted appellant's waiver and, on October 19, 1983, assessed punishment at 30 years' imprisonment.

On November 3, 1983, appellant filed a notice of appeal. Appellant filed a Motion for New Trial on November 18, 1983 and a First Amended Motion for New Trial on December 28, 1983. On December 29, 1983, the trial court held a hearing on appellant's First Amended Motion for New Trial. At the conclusion of this hearing, the trial court set aside appellant's waiver of his right to appeal, and appellant, in open court, again gave Notice of Appeal. Appellant's motion for new trial was subsequently overruled by operation of law. The record also reflects that appellant filed a notice of appeal on December 29, 1983; however, this written notice is not part of the record. We find that the appellant timely perfected his appeal.

Appellant attacks the judgment of the trial court through two grounds of error. However, the State asserts two reasons why, in its opinion, appellant should be denied his right to appeal. We will first address the State's contentions.

First, the State asserts that appellant waived his right to appeal, at no time withdrew his waiver and at no time received either permission to withdraw his waiver or consent from the trial court to appeal his conviction. The State bases its assertions on the contention that appellant's First Amended Motion for New Trial was untimely filed and, therefore, testimony arising out of that hearing cannot be considered on appeal. *See Summerford v. State*, 627 S.W.2d 468 (Tex.App.—Houston [1st Dist.] 1981, no pet.).

TEX. CODE CRIM.PROC.ANN. art. 40.-05(b) (Vernon Supp.1984) provides that:

"(b) One or more amended motions for new trial may be filed without leave of court before any preceding motion for new trial filed by the movant is overruled and within 30 days after the date the sentence is imposed or suspended in open court."

Because appellant's First Amended Motion for New Trial was not filed until seventy (70) days after sentence had been imposed, the State asserts that appellant's amended motion was untimely.[1]

In *Summerford*, the appellant complained about issues raised during a hearing on his third amended motion for new trial. The Court held that no issues were presented for review regarding this hearing because this third amended motion was not filed until *after* both his first and second amended motions had been overruled by operation of law. In *Summerford*, it was the fact that a ruling had, in effect, already been made on the appellant's second amended motion that prevented appellant from filing his third amended motion or having any proceedings connected therewith.

In our case, there is no question but that appellant filed his first amended motion prior to any ruling on his original motion for new trial. At issue is the fact that appellant filed his first amended motion more than 30 days after the date sentence was imposed. Article 40.05(b) merely provides that "amended motions ... may be filed *without leave* ... within 30 days after the date the sentence is imposed...." (Emphasis ours). We see no reason why appellant could not file a late amended motion for new trial *with the leave of the court*, provided such leave in no way operated to extend the 75-day time limit by which appellant is required to secure a ruling on his final motion and provided any earlier motions had not already been ruled on. *See* Article 40.05(b), (c) and (d). While

**1.** In *Ex parte Drewery*, 677 S.W.2d 533 (Tex. Crim.App.1984), the Court, in dicta, stated that "Art. 40.05(b), V.A.C.C.P., specifically provides that a motion for new trial may be amended without leave of the Court at any time prior to the overruling of said motion."

there is no express granting of leave to file a late amended motion for new trial, we find that the trial court's timely act of holding a hearing on appellant's late-filed amended motion for new trial constitutes, in and of itself, leave to file this late motion. *See Fentis v. State,* 582 S.W.2d 779 (Tex.Crim.App.1979); *Arsola v. State,* 138 Tex.Cr.R. 1, 133 S.W.2d 585 (1939). Appellant's first amended motion for new trial was not void, and all testimony and court rulings occasioned at the hearing on this motion are properly before us on appeal.[2]

■ The State also asserts that appellant's notice of appeal was premature and of no effect. "[W]hen an appellant gives notice of appeal prematurely the same shall be deemed to have been filed on the date of, but subsequent to the date of the overruling of the motion for new trial, if such a motion is filed." *Mayfield v. State,* 627 S.W.2d 474, 475 (Tex.App.—Corpus Christi 1981, no pet.). Appellant's notice of appeal, although premature, is nevertheless effective.

■ Appellant's second ground of error asserts that the trial court erred by failing to grant his motion for new trial premised on newly discovered evidence. It is appellant's contention that evidence offered by a newly discovered witness to the effect that appellant did not come within touching distance of the complaining party (victim) is sufficient to require the granting of a new trial. We disagree.

■ A motion for new trial based upon newly discovered evidence is addressed to the sound discretion of the trial court and its decision will not be disturbed on appeal absent a clear showing of abuse of discretion. *Bolden v. State,* 634 S.W.2d 710 (Tex.Crim.App.1982). To establish abuse of discretion in overruling the motion, the record must indicate, among other things, that the evidence is probably true and its materiality is such as will probably bring about a different result on another trial

and that it is competent and not merely cumulative, corroborative, collateral or impeaching. *Bolden,* 634 S.W.2d at 712; *Carlisle v. State,* 549 S.W.2d 698 (Tex. Crim.App.1977). Even if believed, appellant's evidence is merely corroborative of another witness who testified at trial that he did not see appellant touch the complainant and that appellant was not close enough to touch her. Furthermore, the very nature of the offense requires no proof of an actual touching. We find no abuse of discretion. Appellant's second ground of error is overruled.

■ Appellant asserts in his first ground of error that the evidence is insufficient to show that the pocket knife used in the offense was a "deadly weapon." Since an ordinary pocket knife has been held not to be a deadly weapon, per se, the State was required to show that the weapon used by appellant, in the manner of its use or intended use, was capable of causing death or serious bodily injury. *Limuel v. State,* 568 S.W.2d 309 (Tex.Crim.App.1978).

The complainant testified that she was returning to her car after buying groceries at a store in Houston. When she got to her car, she noticed appellant approaching her in a rapid fashion. When he was next to her, he grabbed her right wrist and told her to "just be quiet and get in the car and everything will be all right." At this point, he showed her a knife. She testified that the appellant was holding the knife in his right hand. She described the knife blade as "sticking out an inch. It looked real sharp, but it was sticking out an inch." According to the complainant, appellant first made sure she could see the knife and then brought it down "like it's at my stomach." In elaborating on this statement, she said that "at one point it was perhaps, you know, aiming at my chin." She also stated that "he kept moving it [the knife], but it was slow movements. He just want-

---

**2.** In any event, we find that the Court's ruling withdrawing appellant's waiver of his right to appeal would be properly before us today if by no other means than as part of an informal bill

of exceptions. *See Patteson v. State,* 633 S.W.2d 549 (Tex.App.—Houston [14th Dist.] 1982, no pet.).

ed me to—he made sure I saw it, and then it (the knife) sort of got toward my stomach."

According to the complainant, after appellant grabbed her, she "... twisted out of his grip and ran with high heels on." When she started to run, appellant said "don't run or I'll shoot." She did not see a gun and, although concerned over the threat, she continued to run and took refuge inside a store. Appellant was later apprehended in the parking lot.

A knife was recovered near the scene and introduced into evidence at trial. Harris County Deputy Sheriff Heitmann described the knife as a pocketknife with three blades. He described the length of one of the blades as "approximately an inch-and-a-half," an "inch-and-three-quarters." The complainant described the knife as "five, six, four [inches], if it's all unfolded."

Deputy Heitmann testified that, in his opinion, the knife that was introduced into evidence was a deadly weapon. He also answered affirmatively when asked if "a man were to have that [knife] in his hand and in front of a woman's face, would that knife be capable of causing serious bodily injury or death in its intended use and that is slashing at the throat area or possibly poking it in the face area, possibly stabbing someone in the eye?"

■ A review of the case law shows that factors to be considered in determining the sufficiency of the evidence include the size, shape and sharpness of the knife; the proximity of the assailant and victim; threats and gestures made by the assailant; and wounds suffered by the victim. In *Alvarez v. State*, 566 S.W.2d 612 (Tex.Crim.App. 1978), the evidence was found insufficient where the defendant, armed with a hook-type linoleum knife, made a swing at the victim from three to four feet away, despite the fact that the weapon "looked sharp." Thus, according to the Court of Criminal Appeals, despite the defendant's violent gesture with the sharp object, it appeared to the Court that the assailant and victim were not close enough to allow a conclusion that the weapon, in its manner or use or intended use, was capable of causing death or serious bodily injury.

Likewise, in *Davidson v. State*, 602 S.W.2d 272 (Tex.Crim.App.1980), the evidence was found insufficient where a shoplifter confronted by a store clerk pulled a knife with a two-and-a-half to three-inch long blade and said, "If you come any closer, I'm going to cut you," when the clerk was from five to six feet away from the defendant.

In *Hawkins v. State*, 605 S.W.2d 586 (Tex.Crim.App.1980), however, the evidence was found sufficient where the defendant, armed with a knife having a blade four to six inches long, lunged at the victim and missed by only five to ten inches.

Likewise, in *Vaughn v. State*, 634 S.W.2d 310 (Tex.Crim.App.1982), a unanimous panel of the Court of Criminal Appeals found the evidence sufficient where the defendant "displayed the knife in front" of the victim and demanded money, and a police officer testified that the knife was capable of being used as a deadly weapon or to cause serious bodily injury. It is unclear from the opinion whether the knife was introduced into evidence so that the jury could make its own evaluation.

In *Blain v. State*, 647 S.W.2d 293 (Tex. Crim.App.1983), the evidence was held insufficient where the defendant displayed "something like a kitchen knife" during a robbery and no evidence was elicited as to the blade's length, and the assailant had made no gestures with the knife.

Recently, in *Tisdale v. State*, 686 S.W.2d 110 (Tex.Crim.App.1984) (State's Motion for Rehearing Pending), a sharply divided Court of Criminal Appeals found the evidence insufficient to show that a knife with a two and one-fourth-inch blade was a deadly weapon where the defendant had made no threat and made no gesture with the knife.

In several cases, even where the victim actually suffered wounds, the evidence was

found insufficient to show that the knife was a deadly weapon despite what appeared to be serious wounds. See *Harris v. State*, 562 S.W.2d 463 (Tex.Crim.App. 1978); *Danzig v. State*, 546 S.W.2d 299 (Tex.Crim.App.1977). These cases are questionable authority as they were overruled in part in *Denham v. State*, 574 S.W.2d 129 (Tex.Crim.App.1978), wherein the Court of Criminal Appeals discarded the rule that expert testimony was necessary on the deadly weapon issue.

■ In the present case, the testimony establishes that the assailant and the victim were about a foot apart and that appellant had grabbed the victim's wrist. Accompanying this physical contact was the appellant's threat "Just be quiet and get in the car and everything will be all right." Moreover, the gestures made with the knife—while slow—clearly amount to more than just the holding of a knife. According to the victim, he aimed the blade, which "looked real sharp," at her chin and the knife, which appellant kept moving, "got toward my stomach."

In addition, the police officer who had been involved in cases involving knives about 8–10 times a year during his four years with the police department, testified that, in his opinion, the knife was a deadly weapon.

Here, the knife was introduced into evidence. The jury had the opportunity to observe the witnesses, see the knife and listen to the description of the manner of its intended use. We find that the common experience and understanding of the jury in this case was sufficient to assess the propensities of the manner of use or intended use of this particular knife to inflict death or serious bodily injury by the assailant. We hold that the evidence is sufficient for the jury to find that the defendant was guilty of aggravated assault. Appellant's ground of error is overruled.

The judgment of the trial court is AFFIRMED.